**STATE of Missouri ex rel. GANNETT OUTDOOR CO. OF KANSAS CITY, et al., Appellants,**

v.

**CITY OF LEE'S SUMMIT, Missouri, et al., Respondents.**

**No. WD 53896.**

Missouri Court of Appeals, Western District.

Nov. 10, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 1997.

Application for Transfer Denied Jan. 27, 1998.

Sherwin L. Epstein, Kansas City, for Appellants.

Stephen P. Chinn, Kansas City, for Respondents.

Before HOWARD, P.J., and
BRECKENRIDGE and HANNA, JJ.

HOWARD, Presiding Judge.

This is an appeal from the trial court's order upholding the City Council's denial of a special use permit. Appellants contend the trial court erred in affirming the City Council's denial of Gannett's request for a special use permit for an outdoor advertising structure because the Council's decision was 1) unlawful, arbitrary and capricious, constituting an abuse of discretion; 2) not supported by competent and substantial evidence upon the whole record; 3) contrary to the weight of the evidence.

### Facts

John Ivey and Joyce Ivey are owners of a certain tract of real property located at Lot 3A, Lakewood Business Park, at 4101 NE Lakewood Way, Lee's Summit, Missouri ("subject property"), where they would like to have an outdoor advertising sign ("billboard"). They own all of the Lakewood Business Park, which consists of approximately 70 acres, of which approximately 45 are now developed. The entire business park is zoned I–P (Industrial Park District). Adjoining the industrial park on the west is a frontage road called NE Lakewood Way, which adjoins Interstate 470, Missouri Highway 291. Property on the other side of I–470 adjoining on the west is zoned R–3A (Garden Apartment District) and CP (Planned Business District). The R–3A property is approximately 600 feet to the west across I–470. It is undeveloped.

On February 13, 1996, the Iveys and Gannett Outdoor Company of Kansas City filed an Application for Special Use Permit (No. 1341) under the City of Lee's Summit Ordinance No. 715 to operate an outdoor advertising sign greater than 72 square feet on the subject property for a period of ten years. An off-premise sign is permissible in District I–P. However, signs in excess of 72 square feet must obtain a Special Use Permit in accordance with Section 280 of Ordinance 715. The billboard in question was 14 feet by 48 feet, for a total of 672 feet. It would be 45 feet high. It is an industry standard sized billboard.

On March 11, 1996, the City Planning Commission held a public hearing on the permit application. At the hearing, the Commission heard testimony from the following individuals: Steven Bridgens, real estate and public affairs representative of Gannett; David Robinson, the City's Director for Community Development; and Lowell Hinerman, a resident of Lee's Summit who opposed the sign. Following the hearing, the Commission voted unanimously to recommend denial of the permit application. The staff's recommendation was that the Council deny the special use permit because "the proposed sign's proximity to and visibility from residentially zoned land to the west will have an adverse impact on the use and enjoyment of that property for its intended and appropriate use."

On May 21, 1996, the City Council of Lee's Summit ("Council") held a public hearing for the permit. The testimony presented at the hearing before the Council is discussed *infra*. The Council voted unanimously to deny the permit application, based on "the premise of the ... staff's recommendation for denial." Appellants thereafter filed their Petition for Writ of Certiorari and Verified Petition for Judicial Review. On January 2, 1997, the trial court issued its Findings of Fact and Conclusions of Law and Order of Final Judgment affirming the Council's decision to deny the permit application. This appeal followed.

### Standard of Review

■ When the Council considers a special use permit application, it acts in an administrative capacity. *State ex rel. Presbyterian Church of Washington, Missouri v. City of Washington, Mo.*, 911 S.W.2d 697, 700 (Mo. App. E.D.1995); *State ex rel. Crouse v. City of Savannah*, 696 S.W.2d 346, 347 (Mo.App. W.D.1985). Judicial review of an administrative factual determination is limited to whether the decision was supported by substantial and competent evidence; whether the decision was procedurally unlawful or otherwise unauthorized by law; whether the decision was arbitrary, capricious or unreasonable; or whether the decision constituted

an abuse of discretion. *State ex rel. Columbia Tower, Inc. v. Boone County*, 829 S.W.2d 534, 536 (Mo.App. W.D.1992).

 We review the findings and decision of the Council to deny the application for a special use permit, and not the judgment of the circuit court. *Village Lutheran Church v. City of Ladue*, 935 S.W.2d 720, 722 (Mo. App. E.D.1996). A reviewing court may not substitute its own judgment and may not set aside an administrative decision unless the decision is clearly contrary to the overwhelming weight of the evidence. *Columbia Tower*, 829 S.W.2d at 537; *see also Longview of St. Joseph, Inc. v. City of St. Joseph*, 918 S.W.2d 364, 369 (Mo.App. W.D.1996) (Court of Appeals will not substitute its judgment for the council's judgment denying special use permit, unless the council's decision was arbitrary and unreasonable). We view the evidence in the light most favorable to the administrative decision. *Columbia Tower*, 829 S.W.2d at 536. Furthermore, the decision of the Council carries with it a strong presumption of validity which cannot be overcome by anything short of "clear and convincing evidence." *Davco Food Inc. v. City of Bridgeton*, 725 S.W.2d 32, 34 (Mo.App. E.D.1986).

### Argument

 We first address Appellants' argument that the Council's decision was not supported by competent and substantial evidence. Competent evidence is relevant and admissible evidence that can establish the fact at issue. *Consolidated School Dist. No. 2 v. King by Dresselhaus*, 786 S.W.2d 217, 219 (Mo.App. W.D.1990). Substantial evidence is competent evidence which, if believed, would have probative force upon the issues. *Citizens for Rural Preservation, Inc. v. Robinett*, 648 S.W.2d 117, 124 (Mo.App. W.D.1982).

 The Comprehensive Zoning Ordinance for Lee's Summit, No. 715, Section 280 provides that a sign greater than 72 square feet may be approved by the Board of Aldermen (now the City Council) if in the Council's judgment the sign will not "seriously injure the appropriate use of neighboring property and will conform to the general intent and purpose of this ordinance...." Appellants argue that Respondents did not present any evidence to the Council that the proposed billboard would cause serious injury to the use of neighboring property. We disagree. David Robinson, the City's Community Development Director and a professional planner, testified that while the sign application did meet the ordinance requirements, the visual impact of the sign would seriously injure the appropriate use of the neighboring property. He further testified that the sign to the north of the site of the proposed sign was highly visible from the property to the west across I–470. He expressed his opinion that. the proposed billboard would have a negative effect on the property value of neighboring residential property, which constituted serious injury.

In *City of Lake Lotawana v. Lehr*, 529 S.W.2d 445, 452 (Mo.App.1975), we found that a professional land use planner's testimony concerning matters at issue in an application for a special use permit alone constituted competent and substantial evidence to support the board of zoning adjustment's decision on the permit. We also found that "even if the opponents ha[d] introduced substantial and competent evidence to the contrary, that would afford no basis for invalidating the Board's action. The test is whether the Board's finding is supported by competent and substantial evidence; if it is, then the substantiality of contrary evidence is immaterial." *Id.* Similarly, in this case, Robinson's testimony alone constituted competent and substantial evidence which provided adequate support for the Council's decision, regardless of the evidence presented by Appellants.

However, in this case, Robinson's testimony was not the only evidence that supported the Council's decision to deny the permit. Numerous maps and photographs of the site of the proposed sign were in evidence, as were the Community Development Department Staff's comments concerning the permit addressed to the Planning Commission and the City Administrator, the Comprehensive Development Plan for the City of Lee's Summit, the Site Plan and Sign Elevation Plan, a memo summarizing action taken at the Plan-

ning Commission meeting, and minutes of the Planning Commission meeting. These exhibits and Robinson's testimony constituted competent and substantial evidence supporting the Council's decision.

Appellants argue that evidence of a decrease in property values does not constitute serious injury to the use of the neighboring property. Because the Ordinance does not define "serious injury," we must look to the purpose of the Ordinance, case law and common sense in determining whether a decrease in property values constitutes serious injury. One of the stated purposes of the Ordinance, as provided in Section 350, is to "safeguard ... property values ... by regulating and controlling ... all on-site signs and off-site signs and sign structures located on private property." The Council's denial of the special use permit conforms to the purpose of the zoning ordinance. In addition, aesthetic considerations are appropriate in zoning matters. *Columbia Tower*, 829 S.W.2d at 536. Aesthetics are inextricably intertwined with encouragement of the most appropriate land use and conservation of property values. *Id.* Therefore, the Council could have reasonably concluded that if the sign was visible from the R–3A property, it could negatively affect property values, constituting serious injury to the R–3A property.

Appellants next argue that the Council's decision was contrary to the weight of the evidence. Four persons testified on behalf of Appellants at the hearing. John Roe, attorney for Appellants, described pictures he had taken of the site of the proposed billboard and the surrounding area. Steven Bridgens, real estate and public affairs representative of Gannett, testified that his proposed sign met all the requirements of state and local laws, and that in his opinion the sign would not injure the use of the neighboring properties. John Ivey then testified that the proposed sign would not affect his own property or any of its tenants. James Hand, a real estate appraiser, testified that he could not see the site of the proposed billboard from the property to the west across I–470. He further testified that an existing sign was not causing property values

to depreciate in a subdivision to the north of the proposed sign, and that the proposed sign would not cause injury to the neighboring R–3A property to the west. One person, David Robinson, whose testimony is described *supra*, spoke on behalf of Respondents.

Appellants suggest that because four persons testified on their behalf at the hearing, while only one person spoke on behalf of Respondents, Appellants' evidence outweighed Respondents'. However, the concept of the "weight of the evidence" refers to its probative value, not the quantity of evidence. *Dresselhaus*, 786 S.W.2d at 219. Therefore, the fact that Appellants may have presented more evidence does not necessarily mean that the weight of the evidence is in Appellant's favor.

Furthermore, determination of the credibility of witnesses is for the administrative tribunal. *Columbia Tower*, 829 S.W.2d at 537. If the evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination and it is irrelevant that there is supportive evidence for the contrary finding. *Davco*, 725 S.W.2d at 34. In the present case, one disinterested witness, James Hand, testified that the billboard would not cause serious injury to the neighboring property. David Robinson's testimony controverted Mr. Hand's testimony. We find that in this case, the evidence warranted either of two opposed findings. Therefore, we are bound by the Council's determination of credibility of the conflicting testimony and witnesses, as well as its final decision to deny the permit.

We next consider whether the Council's decision was procedurally unlawful. Appellants argue that David Robinson improperly suggested that applications had been submitted to rezone the R–3A property to R–1 property (Single Family Residential District). Appellants contend that no applications had been submitted to rezone the property and that Robinson's suggestion that the applications had been submitted improperly persuaded the Council to deny the permit application. However, Robinson conceded in his

testimony that the applications had not been submitted, and therefore the Council had accurate information concerning the status of the R–3A property when it denied the permit application.

Appellants next argue that the I–470 Corridor Report was not in evidence at the hearing, was prejudicial, and should not have been considered by the Council in its decision to deny the permit. We do not presume that the Council based its decision on the Report simply because there is no evidence in the record that it did not do so. *See State ex rel. Steak n Shake, Inc. v. City of Richmond Heights,* 560 S.W.2d 373, 379 (Mo.App.1977). When there is no evidence that the Council relied on the Report in making its decision, the agency is entitled to a presumption of regularity. *Id.* In this case, Robinson and the Staff Report referred to the Report. However, there is no indication that the Council relied on the Report in making its decision. In addition, competent and substantial evidence other than the Report supports the Council's findings.

Appellants contend they were denied a fair and impartial hearing before the Council because there is evidence of bias on the Council's part and an effort to eliminate billboards in the City. We disagree with Appellants' assertion that the Council is using the I–470 Report to circumvent state law. Furthermore, we find that there is no evidence to indicate that Appellants did not receive a fair hearing, or that the Council is attempting to eliminate billboards in Lee's Summit. Appellants were allowed to present all their evidence, rebut Respondents' evidence, and Appellants and Respondents were questioned by the Council members during the hearing. The fact that the Council members voted without discussing the matter among themselves does not indicate that Appellants did not receive a fair hearing.

The judgment of the trial court is affirmed.

All concur.